THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
*v.* FERDINAND CAROLIN, Appellant.

*Court of Appeals, June* 28, 1889.

1. *Criminal law. Transferring indictment.*—An indictment found in the "general sessions of the peace, of the city and county of New York," may, on application of the district attorney, and without notice to the defendant, be transferred to the court of oyer and terminer, there to be determined.

2. *Trial. Juror.*—It is for the trial court to determine from the whole examination of a juror, including his appearance and demeanor, as to his competency, under subd. 8, section 377 of the Criminal Code; and a decision sustaining the challenge is not error, where, upon the trial of an indictment for murder in the first degree, a juror, challenged by the people for bias, testified that his scruples were such as to render him extremely reluctant to find the defendant guilty of murder in the first degree, even though this testimony was somewhat modified by further examination.

3. *Criminal law. Murder.*—Evidence held sufficient to sustain a charge of murder in the first degree. ·

Appeal from a judgment of the oyer and terminer, entered upon a verdict convicting the defendant of the crime of murder in the first degree.

*Wm. F. Howe,* for appellant.

*James W. Goff,* for respondent.

DANFORTH, J.—Our judgment must, in this case, be against the appellant. The circumstances of the homicide leave no doubt that the act was qualified by every condition which, by statute, constitutes murder in the first degree Its subject was the defendant's wife in name, but mistress in fact. He determined upon a separation, and to this she did not assent. Quarrel and threats followed, and at the time named in the indictment, a scream was heard coming

from the hall into which the prisoner's apartment opened, and he was seen drawing the woman by her hair into his room, and the door closed; other screams were heard as from a woman, and a sound as of something dragged on the floor; there was a kind of chopping or dull sound—eighteen or twenty in rapid succession—and while this hitting was going on, a man's voice was heard; he said, "Now die, die, die." There was an eyewitness; a woman standing on a stoop close to the window of the defendant's room, and on a level with it. She heard a scream, and looking in at the window, saw the defendant holding his wife with his left hand, and she says "he struck her with an axe on the forehead." "He kept on, striking her several blows"—three or four. The witness went for assistance to a lower room, and from there heard dull, muffled blows. Officers Conner and Breen came. They found the prisoner and the body of his wife. Conner asked the defendant "what he assaulted his wife for," and he said, "she wanted me to kill her, and I killed her." Her body showed the result of blows; contusion of the cheek, abrasion of the right eye, wound under the chin, compound fracture of the upper jaw, fracture of the lower jaw, fracture of the nasal bone, destruction of the right eye-ball, compound fracture of the skull, fifth, sixth, seventh, eighth, ninth and tenth ribs of the right side, and as many on the left side broken, and the physician "found as cause of death these multiple fractures and contusions."

Upon the trial, as a witness in his own behalf, the prisoner testified that on the occasion in question he gave his wife one blow only, and that with his fist; that she then seized the axe and, in spite of his efforts to prevent her, struck herself with such effect as to produce the injuries above described. There was no other defense and, indeed, except by criticism and exceptions by counsel, the prisoner was undefended. It was impossible, in view of the evidence, for his counsel to do more. The offense, charged was unmistakably made out, and there was not the slightest founda-

tion for the motion, the denial of which furnished the ground for the first point now argued for the appellant, viz., that the charge of murder in the first degree should be withdrawn from the consideration of the jury.

The indictment was found in the "general sessions of the peace, of the city and county of New York," and on application of the district attorney, and without notice to the defendant, was sent to the court of oyer and terminer, there to be determined. At the opening of the trial, the prisoner's counsel objected that for want of such notice the removal was invalid and the court without jurisdiction. The objection was properly disregarded. The power to make such transfer is given by statute, and neither by legislation nor the decision of any court to which our attention is called, or of which we have knowledge, is it made necessary to apprise a person indicted that an indictment found in one court will be taken for trial into another, Nor does it appear that either reason or the ends of justice. or the preservation of any right of the citizen, requires that the practice contended for by the appellant should prevail. He might as well complain that he had no previous notice of the application for the indictment.

Other exceptions also forming the basis of argument were taken at the trial. They relate to its conduct, to the sustaining by the court of challenges by the people to jurors, upon the ground of their opinions concerning capital punishment. The Code of Crim. Procedure, § 377, provides that, in such a case as the present, a person entertaining "such conscientions opinions as could preclude his finding the defendant guilty, shall neither be permitted nor compelled to serve as a juror."

On this occasion each said, in substance, that his scruples were such as would render him "extremely reluctant to find the defendant guilty of murder in the first degree," and although this was attenuated, and somewhat modified, by further examination, it was for the court to say, from

the whole examination of the juror, including his appearance and demeanor, whether he was fit and competent to perform, fairly and impartially, his duty as a trier of the issues which involved such result.

Other objections were made by the defendant's counsel, to decisions of the court in the course of empanelling the jury, to some questions on testimony, and to refusals of the court to charge, in certain respects, as requested by him. We have examined all. We find none that possess any merit and except for the importance of the case, they, as well as those already mentioned, would have been treated as frivolous. The prisoner was well and carefully tried ; he had the benefit not only of the substance, but the forms of law, and no other result than that expressed in the verdict-of the jury and the judgment of the court could have been reached.

That judgment must be affirmed.

All concur, except FINCH, J., absent.

2. *Same. Exception.*—An exception to evidence, on the ground that it is cumulative, which is clearly frivolous, furnishes no ground for disturbing the judgment.

3. *Same.*—Facts held sufficient to warrant a conviction of murder in the first degree.

Appeal from a judgment of the court of general sessions